UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENNIFER S. TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:03-cv-2025-DFH-WTL |
| ) | |
| RESORT CONDOMINIUMS ) | |
| INTERNATIONAL, LLC, ) | |
| ) | |
| Defendant. ) | |

ENTRY ON MOTION FOR SUMMARY JUDGMENT
AND OTHER PENDING MOTIONS

In the autumn of 2002, plaintiff Jennifer Turner lost her job at defendant Resort Condominiums International, LLC ("RCI"). She was pregnant at the time, and she has sued RCI for pregnancy and sex discrimination. RCI has moved for summary judgment. Also pending are plaintiff's motion to reconsider the denial as moot of her motion to compel additional discovery, and her motion for sanctions for failure to comply with discovery obligations. As explained below, RCI's motion for summary judgment is granted. The undisputed evidence shows that RCI decided to include Turner in a reduction in force before RCI knew she was pregnant, and Turner has no other evidence that would allow a reasonable jury to find that RCI terminated her employment because of her pregnancy or her sex. The discovery disputes provide no reason to delay further the resolution of this case. Plaintiff's motion to reconsider denial of her motion to compel is denied;

and plaintiff's motion for sanctions is denied. However, because RCI did not comply fully with its discovery obligations until after plaintiff filed her motion to compel, the court will deny RCI the otherwise routine costs awarded to a prevailing party under Rule 54(d).

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson,* 477 U.S. at 255; *Conley v. Village of Bedford Park,* 215 F.3d 703, 708 (7th Cir. 2000). Because "summary judgment is not a paper trial, the district court's role in deciding the motion is not

to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*

*Undisputed Facts*

The factual statements here are not necessarily accurate but reflect the evidence in light of the summary judgment standard, giving plaintiff the benefit of conflicts in the evidence and reasonable inferences from the evidence. Pursuant to Local Rule 56.1, the court has assumed as accurate any material facts set forth and supported by defendant that were not specifically identified as disputed by plaintiff, with appropriate references to supporting evidence in the record.

Defendant RCI brokers the exchanges of vacation timeshares among owners and between resorts and visitors. It has its headquarters in Parsippany, New Jersey, and a major center of operations in the Indianapolis area, and other offices throughout the world. Prior to October 8, 2002, part of RCI's employee compensation function was performed in the Human Resources Department at the Indianapolis office. Plaintiff Turner was a compensation analyst who had worked for RCI since December 27, 1999. Her job responsibilities included administering compensation and benefit programs, conducting small to moderately complex compensation analysis projects, assisting managers with more complex projects, maintaining documentation of internal practices, coordinating salary surveys and

collecting recommendations for employee stock options from all RCI offices to determine if those recommendations met guidelines. Brenda Ditlinger was Turner's direct supervisor. Most of the work done by Turner and others in the Indianapolis Human Resources Department was for RCI's North American offices.

William Skrzat became RCI's Director of Global Compensation and Benefits on October 29, 2001. Skrzat worked out of the company's Parsippany office. He would occasionally enlist the support of Turner and others in the Indianapolis office to assist him on particular domestic and international projects. He depended more on Human Resources personnel in Parsippany for international compensation issues, which dominated the new projects due to the large growth in RCI's international business. In August 2002, Skrzat learned of a forthcoming cost saving initiative at RCI that would include a reduction in force ("RIF"). His superior, Mary Falvey, provided him with a copy of a memo from RCI's CEO Kenneth May announcing the forthcoming RIF. The memo also provided sample severance and release documents and asked RCI managers to look for positions that could be eliminated to save $5 million annually. Falvey, who was the Global Human Resources Executive Vice President for both RCI and its parent company Cendant, placed Skrzat in charge of implementing the RIF by coordinating with regional department heads. She also assigned Virginia Rakowsky, RCI's Director of Human Resources at Parsippany, as the point person for gathering the lists of RIF candidates from the various business units and compiling the necessary severance documents.

At this same time, Skrzat was attempting to consolidate all of the company's compensation functions by having those functions performed out of the Human Resources Department in Parsippany. Skrzat determined that he could eliminate the positions in the compensation area at the Indianapolis office to contribute toward the cost reduction, though he also later determined he would need an additional compensation analyst in Parsippany to handle the increased workload there. He informed Virginia Rakowsky, Director of Human Resources, of his decision regarding the Indianapolis jobs he believed should be eliminated and indicated that those were the jobs held by Brenda Ditlinger, Ken Williams and Turner. On September 10, 2002, Rakowsky drafted a preliminary impact summary. It listed those employees who would be terminated, including the three from Indianapolis, and set forth an estimated savings. She sent the summary via e-mail to Skrzat and indicated on the attached spreadsheet that additional discussions regarding "HR in Indy" would take place on September 12th.

On September 12th, Debbie Routt, RCI's North American Vice President for Human Resources, flew from Indianapolis to Parsippany for a meeting to discuss the RIF. Routt worked out of the Indianapolis office but answered to Falvey, who was in New Jersey. At that meeting, Falvey, Routt, Rakowsky and Skrzat discussed the RIF. Skrzat explained his plan to consolidate the compensation functions in the Parsippany office. Routt expressed concern about eliminating Ken Williams' position because he had some especially valuable skills. His familiarity with the Human Resources Information System allowed the company

to do more efficient year-end processing of merit reviews, stock option grants and bonuses. Everyone at the meeting agreed that Williams' position should not be part of the RIF. Other employees in Routt's department at Indianapolis were identified as having jobs that could be eliminated, including a group of employees responsible for employee training. In total, nine Indianapolis Human Resource employees had their jobs eliminated as a result of the RIF, seven women and two men.

Over the weekend of September 21-22, 2002, more than a week after this key meeting, Turner learned that she was pregnant. On Monday, September 23rd, she told Routt that she was pregnant. That same day, Routt informed Skrzat of Turner's pregnancy. He had not known of her pregnancy until that time. Skrzat then spoke with Rakowsky, who had more experience as an HR generalist, to ask if Turner's pregnancy was an issue to be concerned with in connection with the RIF. Rakowsky told Skrzat it should not be an issue because the decision was made before they knew of the pregnancy.

Skrzat traveled to Indianapolis and met with Ditlinger and Turner on October 7th and 8th respectively to tell them their positions were being eliminated. He also met with Mark Koning, who had previously worked as a compensation analyst but had been asked earlier that year to take on an employee relations assignment. He informed Koning that the compensation functions were being consolidated in New Jersey and that Ditlinger and Turner were going to be

let go, but that Koning could continue on in his role in the employee relations department. Koning was also informed that he would be asked to help Skrzat with some compensation issues during the transition of responsibility for those functions. Through the end of the year, Koning spent 75% of his time with employee relations and 25% of his time performing compensation tasks previously performed by Turner. At the beginning of 2003, Koning accepted a position as a Senior HR Business Consultant, and Skrzat hired a new compensation analyst to work out of the Parsippany office.

Turner filed a charge of discrimination with the Equal Employment Opportunity Commission in March 2003. On December 22, 2003, after receiving a right-to-sue letter, Turner filed this lawsuit against RCI. The complaint claims that she was the victim of pregnancy and sex discrimination and also asserts a claim under Indiana law for intentional infliction of emotional distress.

*The Merits*

The Pregnancy Discrimination Act amended Title VII of the Civil Rights Act of 1964 to clarify that pregnancy discrimination is included in the prohibition on sex discrimination in employment. 42 U.S.C. § 2000e(k). Turner has offered no direct evidence of pregnancy or sex discrimination in the decision to terminate her employment. To prove pregnancy or sex discrimination by indirect or circumstantial evidence, she must first offer evidence of a prima facie case of discrimination. That requires her to come forward with evidence showing that:

(1) she was female or pregnant, and her employer was aware of her pregnancy; (2) she was performing her duties satisfactorily; (3) she was discharged; and (4) similarly-situated male or non-pregnant employees were treated more favorably. *Clay v. Holy Cross Hospital,* 253 F.3d 1000, 1005 (7th Cir. 2001).

Viewing the facts in a light most favorable to the plaintiff, she is still unable to make it past the first element with respect to her claim of pregnancy discrimination. Turner told RCI managers of her pregnancy on Monday, September 23, 2002. The undisputed facts show that her name had already appeared on the first list of employees targeted for the RIF and that list had already been discussed and modified in the September 12, 2002 meeting in Parsippany. Her pregnancy could not have played any role in the decision.

Skrzat takes full responsibility for choosing to move the compensation function to the New Jersey HR department and therefore electing to RIF Turner and Ditlinger. The deposition testimony of all other RCI managers supports both his explanation of why Turner was chosen and his ignorance of her pregnancy at the time he made his decision.

Turner argues that the list of employees who would be affected by the RIF was "fluid" and that the final decision on termination was made after her pregnancy announcement. By "fluid," Turner is apparently referring to the fact that Ken Williams was on the initial list but was removed in the September 12th

meeting. The evidence is clear that Turner was always on the list and that nobody suggested she should come off. Also, the undisputed facts show that Williams was taken off the list before anyone knew that Turner was pregnant. If an employer decides to terminate an employee as part of a RIF before it learns of the employee's pregnancy, it is not engaging in pregnancy discrimination. See *Groves v. Cost Planning and Management Intern., Inc.*, 372 F.3d 1008, 1010 (8th Cir. 2004) (affirming summary judgment where employer decided to RIF plaintiff before she told management of pregnancy). That is the case here.

Plaintiff has not come forward with any evidence that raises a reasonable dispute about these points. She has noted the use of two font sizes on a single document and metadata suggesting that one of the RIF lists was modified after the lawsuit was filed. However, the most recent document production and the deposition testimony of RCI's in-house information technology witness establish that at least nine e-mails confirmed Turner's inclusion in the RIF before she told anyone at RCI that she was pregnant.

Putting aside her claim of pregnancy discrimination, Turner meets the first requirement for a prima facie case of basic sex discrimination. However, her sex discrimination claim fails because she has offered no evidence that any similarly situated men were treated more favorably. Whether employees are similarly situated requires an examination of all relevant factors, the content of which depends on the context of the case. *Patterson v. Avery Dennison Corp.*, 281 F.3d

676, 680 (7th Cir. 2002). Nevertheless, the comparison must demonstrate that the other individuals are similar in all material respects. *Id.*

In her brief, Turner argues that sex discrimination is evident because the HR compensation group included three men and two women, and the women were let go and the men were not. That argument ignores a number of facts that Turner admits are true. She admits that she was not comparable to Ditlinger who was her supervisor, or to Skrzat who was an upper level manager who worked out of New Jersey. Turner even accepts the fact that Williams' technology skills and duties put him in another category. She insists that Koning was situated similarly to her and treated more favorably. However, the undisputed facts show that her conclusion is not reasonable.

First, Koning was hired in as a "Senior" compensation analyst due to his experience level, which was considerably greater than Turner's. It is undisputed that he had been assigned to a different area during 2002 to fill in for a pregnant employee on leave, and that he performed different duties and worked for a different supervisor when the RIF took place. Skrzat testified that he did not consider Koning to be a part of the compensation department when he put together the RIF and consolidation of HR compensation functions. The fact that Koning, because of his past experience, took care of most of Turner's responsibilities for a few months until the consolidation in New Jersey was

complete does not provide a reasonable basis for concluding he was a similarly situated employee for purposes of the RIF.

Even if plaintiff had come forward with evidence of a prima facie case of sex discrimination, she has not come forward with evidence that would allow a reasonable jury to find that the stated reason for terminating Turner as part of the RIF was a pretext. The undisputed evidence shows that the HR compensation functions were consolidated in New Jersey, and a female compensation analyst was hired there to perform Turner's and others' responsibilities.[1] Numerous male and female employees were let go from offices all around the world during the RIF. At least one more RIF occurred later, costing other HR jobs in Indianapolis, leaving plaintiff's speculation that she was not let go for economic reasons even less founded in fact. In short, the deposition testimony, affidavits and documents submitted in connection with the summary judgment motion would not allow a jury to find that RCI's stated reason for including Turner in the RIF was false. There is no evidence of pretext, and RCI is entitled to summary judgment on the sex discrimination claim.

Turner's state law claim of intentional infliction of emotional distress also lacks evidentiary support. To support a claim of this nature, there must be evidence of extreme and outrageous conduct. *McCreary v. Libbey-Owens Ford Co.,*

---

[1] There is no basis in company policy or otherwise for plaintiff's belief that she should have been offered the position in New Jersey, nor is there evidence that similarly situated men were given transfer opportunities that she was not.

132 F.3d 1159, 1163 (7th Cir. 1997). The conduct must be so offensive and extreme in character and degree as to be regarded as atrocious and intolerable. *Lachenman v. Stice*, 838 N.E.2d 451, 456-57 (Ind. App. 2005); *Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. App. 1999). There is no evidence of any such conduct and RCI is entitled to summary judgment on this claim as well.

*Motion to Reconsider Denial of Motion to Compel*

On the existing record, the grant of summary judgment was inevitable. In connection with her response to the motion for summary judgment, plaintiff Turner has tried to revive some discovery disputes, which have been numerous and prolonged in this case, beginning with a pre-suit letter from plaintiff's counsel demanding that RCI for an indefinite time not modify or delete any electronic data in any mainframe, desktop, or laptop computers, or other storage media or devices, and not upgrade or replace any equipment or software. The letter also demanded that RCI immediately copy hard drives on personal computers and save any data created after the letter was received.

Concerns about preservation of evidence, and especially electronic evidence, are legitimate and understandable, but the pre-suit letter did not accommodate the routine day-to-day needs of a business with a complex computer network and demanded actions by RCI that went well beyond its legal obligations under

29 C.F.R. § 1602.14 and under its more general duty to avoid deliberate destruction of evidence.[2]

Plaintiff served her First Request for Production of Documents and a First Set of Interrogatories in March 2004, and they were extensive. RCI's response included the e-mail and attachments created by Rakowsky showing that Turner had been selected by Skrzat for the RIF before she told RCI managers she was pregnant. Plaintiff surely recognized that the documents were probably fatal to her claim. She was not convinced that the e-mail and attachment were accurate representations of what was actually written and sent at the time. She began a campaign of deeper discovery, including depositions of Falvey, Routt, Rakowsky and Skrzat.

After obtaining a favorable ruling from the court, Turner also took the deposition of an RCI information technology specialist with regard to the "layout and configuration of its computer system and electronic data sets." After another contested motion, Turner took depositions of several RCI employees regarding efforts to produce documents she requested and efforts to comply with the directives of the pre-suit letter. According to Turner, those depositions disclosed

---

[2]Pending amendments to the Federal Rules of Civil Procedure, which will take effect December 1, 2006 unless rejected by Congress, address discovery of electronic data in some detail. The proposed Rule 37(f) recognizes that discovery should not prevent continued routine operation of computer systems: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."

that RCI had failed to search adequately for responsive documents and had also failed to preserve evidence in the manner prescribed in her attorney's (overly broad) pre-suit letter.

RCI filed its motion for summary judgment on April 19, 2005. Plaintiff obtained extensions of time to respond so that she could pursue her demands for additional discovery. On September 28, 2005, Turner filed a motion to compel further discovery responses. She claimed that RCI had failed to produce important metadata that would show when the e-mail attachment listing Turner as an employee subject to the planned RIF was created and whether it was ever electronically revised. She also suggested that font differences on documents suggested potential alteration and that deposition testimony suggested that more responsive e-mails and other documents existed and had either been destroyed or not recovered by RCI, contrary to its affirmation that it had performed a due and diligent search. According to RCI, plaintiff was attempting to circumvent an earlier court order denying her access to the RCI computers systems, which she had sought to review vast amounts of electronic data.

Plaintiff next filed several agreed motions extending the time in which she could file a reply brief directed to her motion. The motions said the parties were attempting to resolve the discovery disputes without further court intervention. Then plaintiff filed on December 7, 2005 not a reply brief but a "Report to Court on Briefing of Plaintiff's Motion to Compel Defendant's Response to Discovery."

In the report, plaintiff's counsel represented that RCI had recently produced approximately 800 documents and "after reviewing the additional documents, it appears that Defendant has provided, in substantial part, the additional documents Plaintiff first sought in discovery on March 7, 2004." Counsel then went on to opine that with a follow-up deposition of a previously deposed RCI information technology specialist, the remaining issues might be resolved. Two depositions were taken in mid-December, and plaintiff then moved to set new deadlines to finish briefing the summary judgment motion. Plaintiff was ordered to respond to the motion for summary judgment by January 19, 2006.

Magistrate Judge Lawrence issued a routine order on May 3, 2006 denying the plaintiff's motion to compel as moot. There had been no further filings, and the report certainly indicated that the additional production had resolved any lingering dispute. At that time, briefing on the summary judgment motion had been completed, but plaintiff had filed her motion for sanctions on March 27, 2006. That motion was not yet briefed and ready for decision.

Turner then filed on June 9, 2006 a motion to reconsider the May 3, 2006 order denying her motion to compel as moot. She supplied a list of "items" requested, how and when they were requested, and what responses were provided by RCI. Those items include "mirror images" of the hard drives of various RCI personnel, performance of searches of back-up tapes, diskettes created by Debbie Routt, and a document directing that a "litigation hold" be placed in effect. RCI

responded that the "litigation hold" document is privileged, the data on the Routt diskettes had been produced, and that its earlier offer to allow inspection of the discs themselves was ignored previously. RCI also asserted all previously raised objections and pointed out that Turner's request for the hard drives was not made until long after discovery had closed and, to the extent the pursuit of the hard drives was a part of the plaintiff's request to have access to RCI's computer systems, it was denied previously by the magistrate judge. Archived data sought by plaintiff was previously denied her because the request was untimely as well.

Plaintiff has not presented a good reason to reconsider the earlier entry denying her motion to compel. First, based on what the plaintiff had filed with the court, the magistrate judge had every reason to believe that the parties had succeeded in resolving their discovery disputes through the supplemental production in November 2005 and the two depositions conducted on December 19, 2005. The record also shows that defendant's assertions are accurate with respect to timing and its objections are well founded as well. Plaintiff has had ample opportunity to search for evidence that would support her claims. There is no need to prolong the case further. The motion to reconsider is denied.

*Motion for Sanctions*

Plaintiff has also moved for sanctions for failure to provide required discovery. The motion is based in large part on plaintiff's belief that a company

who receives one of her counsel's evidence preservation letters is from that point forward bound to take steps in compliance with that letter. As noted, that form letter was overly broad in its demands. There is no evidence of any bad faith alteration or destruction of evidence, and plaintiff has been given ample opportunity to discover such evidence.

The discovery process in this case involved the familiar minuet: after overly broad discovery demands were followed by overly broad objections, experienced counsel on both sides got down to more serious and specific line-drawing on discovery. The court resolved several disagreements before the summary judgment stage, and then plaintiff filed her new motion to compel while the summary judgment motion was pending. Much of what plaintiff sought to preserve and all relevant information was provided to her no later than November 2005. The additional production effectively resolved the motion to compel. Those documents offered no support for her substantive claim or her claim that RCI was somehow engaged in subterfuge. However, the fact that they were produced only after a motion to compel was filed is problematic. Rule 37(a)(4) of the Federal Rules of Procedure ordinarily calls for an award of fees or costs if a motion to compel is granted "or if the disclosure or requested discovery is provided after the motion was filed."

In light of all these circumstances, including the fact that RCI is entitled to a final judgment in its favor, the court might award sanctions against defendant

based on belated production, followed by a sizable award of costs under Rule 54(d) against plaintiff and in favor of defendant as the prevailing party. The court finds instead that plaintiff should not recover discovery sanctions and that defendant should not recover its costs from plaintiff under Rule 54(d). In essence, both sides share some responsibility for the extraordinary and disproportionate expense and effort devoted to discovery and the attendant disputes here. It would be unjust to inflict more expense on either side, let alone to devote more litigation energy and expense to the precise allocation of costs in both directions. It is time to put this litigation to an end.

*Conclusion*

For the foregoing reasons, Plaintiff's Motion to Reconsider Court's Entry on Plaintiff's Motion to Compel Defendant's Responses to Discovery (Docket No. 133) and Plantiff's Motion for Sanctions (Docket No. 119) are DENIED. Defendant's Motion for Summary Judgment (Docket No. 65) is GRANTED and a final judgment will be entered in favor of RCI and against Jennifer S. Turner. The parties shall bear their own costs.

So ordered.

Date: July 13, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Kevin W. Betz
BETZ & ASSOCIATES
kbetz@kbetzlaw.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Kim F. Ebert
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kim.ebert@ogletreedeakins.com

Bonnie L. Martin
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
bonnie.martin@odnss.com